UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Kristi Stockdale, on behalf of herself and all others similarly situated,<br><br>                 Plaintiff,<br><br>        v.<br><br>Skymount Property Group, LLC, and Skymount Realty, LLC d/b/a Skymount Buys Houses,<br><br>                 Defendants. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

**Nature of this Action**

1. Kristi Stockdale ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Skymount Property Group, LLC ("Skymount PG") and Skymount Realty, LLC d/b/a Skymount Buys Houses ("Skymount Realty," and collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

**Parties**

3. Plaintiff is a natural person who at all relevant times resided in Cleveland, Ohio.

4. Skymount PG is an Ohio limited liability company who runs a real estate marketing and lead generation business headquartered in Berea, Ohio.

5. Skymount Realty is an Ohio limited liability company who runs a real estate agency

1

headquartered in Berea, Ohio.

6. According to the Ohio Department of Commerce Division of Real Estate, Skymount Realty has at least three real estate agents whose licenses are tied to Skymount Realty, including Brett Adam Casey, Nicholas Rokakis, and Caleb Adam Barney.

7. Skymount Realty owns and operates the Ohio registered trade name "Skymount Buys Houses."

8. Upon information and belief, Defendants are owned, managed, and operated by Brandon Moherman, an Ohio-licensed real estate broker.

9. Furthermore, upon information and belief, Defendants share the same office at 43 E Bridge St, Ste 202, Berea, Ohio 44017, and share employees, including virtual assistants based internationally.

## Jurisdiction and Venue

10. This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5) and 28 U.S.C. § 1331.

11. Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) as both Plaintiff and Defendants are based in this district and a significant portion of the events giving rise to this action occurred in this district.

12. In particular, Defendants directed their text messages to Plaintiff's telephone in this district, and Plaintiff received Defendants' text messages in this district.

## Factual Allegations

13. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(216) 313-XXXX.

14. Plaintiff uses her cellular telephone as her personal residential telephone number.

2

15. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

16. Plaintiff registered her cellular telephone number with the DNC Registry on July 25, 2017, and has maintained that registration through the present date.

17. In or around February 2022 and continuing through the present, Plaintiff began receiving text messages on her cellular telephone from several telephone numbers, asking about selling a property or engaging Defendants in a real estate transaction:







18. Plaintiff did not recognize the sender of these text messages.

19. Plaintiff is not, and was not, interested in selling her home.

20. Plaintiff is not, and was not, interested in Defendants' services or marketing.

21. Plaintiff estimates that she has received at least 11 telemarketing and solicitation text messages from Defendants from several telephone numbers, including (216) 820-9289 and (216) 238-2175, and believes that she has received additional text messages from Defendants.

22. Upon information and belief, Defendants obtained Plaintiff's contact information through the use of targeted address searches to identify corresponding homeowner names, and then skip-tracing or cross-referenced those names against phone numbers associated with those homeowner names, all the while not scrubbing those phone numbers against the DNC Registry.

23. This belief is formed in part based on Skymount PG's admissions and responses to a slew of negative Google reviews complaining about activity similar, if not identical, to Plaintiff's

experiences:[1]



---

[1]	https://www.google.com/search?q=skymount+property+group+reviews&ie=UTF-8#lrd=0x8830eb60a79d63b1:0x2e0109d81e8eb789,1 (last visited June 12, 2025).

24. Upon information and belief, Skymount PG is a real estate investor that seeks to solicit homeowners to sell their property to it, or use Defendants' real estate services in a real estate property sale transaction.

25. In doing so, Skymount PG offers to purchase homeowners' properties for cash, offering to take care of all aspects of the transaction to facilitate a quick transaction.

26. Skymount PG necessarily offers to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, preparing and completing purchase paperwork, and connecting the homeowner with potential third-party buyers—with its communications to Plaintiff.[2]

27. Defendants maintain several websites, such as https://skymount.net/ and https://skymountbuyshouses.com/, which use and prominently display Skymount Realty's "Skymount Buys Houses" trade name and logo.

28. Skymount PG's website—https://skymountbuyshouses.com/—is a real estate-related website that purports to buy homes from interested consumers, while also offering additional ancillary services to facilitate that process.

29. Prior to receiving the above text messages, Plaintiff did not previously interact with any of Defendants' websites.

30. In its website, Skymount PG purports to pair numerous services with its offers to

---

[2] *See, e.g.*, https://www.liveabout.com/what-real-estate-agents-do-2866370 (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing[ the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.") (last visited June 12, 2025).

buy Plaintiff's property.[3]

31. In fact, Skymount PG explicitly tout that one of the reasons to transact with it is that it provides "Greater Levels of Service" than a conventional real estate transaction.[4]

32. Upon information and belief, Skymount PG seeks to supplant the role of a traditional real estate agent while providing many of the same services as a real estate agent, and in exchange for doing so, are compensated by obtaining a homeowner's property at a reduced price, and thereafter either (1) selling it at an inflated price; (2) assigning the right to purchase the property to a third party in exchange for a fee; or (3) renting the property as a landlord.

33. Upon information and belief, in exchange for providing these services, Skymount PG pays substantially below fair market value for the homes they seek to purchase.

34. As a result, Skymount PG would be (and, upon belief and information, is) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

35. Therefore, upon information and belief, Skymount PG is a real estate wholesaler, which is a strategy in which a wholesaler seeks to (1) persuade a homeowner to sell their home to the wholesaler at a substantial discount below fair market value, in exchange for a suite of services to ease the sale, then (2) prior to completing the purchase, remarket the property to third-party purchasers or investors, to (3) assign or sell the contract to that investor for a substantial premium, thereby allowing the investor to step into Skymount PG's shoes and acquire the house instead,

---

[3]  https://skymountbuyshouses.com/ (last visited June 12, 2025) ("Feel free and enjoy the journey of property selling, while we are here to handle everything.").

[4]  https://skymountbuyshouses.com/5-reasons-why-selling-to-a-cash-buyer-makes-sense/ (last visited June 12, 2025).

with the difference in price solely allocated to Skymount PG (or Defendants) as profit, instead of the homeowner.

36. This conduct is precisely the subject of pending Ohio legislation—Senate Bill 192—a bill that will codify registration and disclosure requirements for wholesalers in the State of Ohio.[5]

37. Upon information and belief, Skymount Realty does not maintain its own website, but rather operates through Skymount PG's websites and Skymount Realty's real estate agents' individual websites.

38. For instance, Caleb Barney's website—https://www.calebbarneyrealestate.com—displays the same logo and trade name used by Defendants, and touts the following as part of offering to "buy, sell, or invest with me":



**CALEB BARNEY**

My name is Caleb and I'm a licensed Realtor with Skymount Realty (dba Skymount Buys Houses), providing unparalleled real estate services to home buyers and sellers in Medina, Cuyahoga, Lorain, and Summit County. As a responsive and attentive agent, I prioritize my clients' needs to ensure a seamless and stress-free experience. Whether you're searching for your dream home or looking to sell your property quickly and efficiently, I am here to help. With my expertise in effective marketing strategies, I can help you sell your home for the best possible price. Don't wait! Contact me today and let's start working towards your real estate goals together!

---

[5] https://www.legislature.ohio.gov/legislation/135/sb192/status (last visited June 12, 2025); *see also* https://www.legislature.ohio.gov//download?key=22901 (last visited June 12, 2025) (the Ohio Legislative Service Commission's Occupational Regulation Report for this bill, discussing wholesaling generally, including the bill's primary sponsor, Senator Andrew O. Brenner's testimony that the "Department of Commerce's Division of Real Estate and Professional Licensing has received reports of a concerning increase in wholesaling activity that involves predatory contracts, misleading sales tactics, clouding title to properties, and targeting susceptible homeowners.").

39. Upon information and belief, to the extent that a consumer expresses interest in selling their home (or buying one) in response to Skymount PG's telemarketing messages, Skymount PG then refers those consumers to Skymount Realty for conventional real estate representation, to be brokered by Skymount Realty.

40. Mr. Barney's reviews corroborate this belief:[6]

**ADRIANE THOMPSON BRADSHAW**

★★★★★

Caleb and his team did an amazing job helping us sell our childhood home. This was a necessary task, but a very emotional experience for us. The Skymount team was helpful, attentive and very professional. They made a difficult task easier than we anticipated.

10/31/24

**EILEEN BLAND**

★★★★★

Caleb and his team were great! Everything went smoothly with the sale of our family home. HE was knowledgeable and patient and easily accessible. He answered all of our questions and walked us through the whole process from the start of the paperwork to the closing. I would definitely recommend Caleb and Skymount.

Less

10/31/24

**CINDI MARTINI**
★★★★★

We sold our home with Caleb quickly. He is knowledgeable, friendly and very professional. He volunteered to help us move some furniture as well! Overall great experience with Caleb and Skymount. Would recommend Caleb for all your realtor needs!

4/25/24

41. Skymount Realty's Google reviews encapsulate the interrelation between Skymount PG and Skymount Realty:[7]

---

[6] *See, e.g.*, https://www.calebbarneyrealestate.com/ (last visited June 12, 2025).

[7] https://www.google.com/search?sxsrf=AHTn8zrfpUmXu7UKzKdeXPGJ9EaDXdRfew:1747676032370&q=Skymount+Buys+Houses&ludocid=6740257750528778306&lsig=AB86z5Ve_GRqpJBQGo4XSFBUX5T_#lrd=0x8830ebedf4c85c5b:0x5d8a34b672d76042,1 (last visited June 12, 2025).

10





42. Upon information and belief, given the significant overlap of ownership, employees, and management between Defendants, the sharing of offices, their joint and interchangeable usage of Skymount Realty's trade name and logo, and the fact that they operate within the same real estate arena, Skymount PG and Skymount Realty operate their telemarketing campaigns as a joint enterprise.

43. Upon information and belief, as a real estate agency, Skymount Realty sought to represent Plaintiff in either a purchase of a new home or a sale of her home, in exchange for a commission or other valuable consideration.

44. The FCC's guidance is particularly illuminating here. Congress charged the FCC with implementing the Federal Do-Not-Call rules. 47 U.S.C. § 227(c)(1). In 2005, the National Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005).

In interpreting the definition of "telephone solicitation," the FCC rejected this proposed exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id*. at 3793-94.

45. In other words, the FCC has expressly declared that conduct materially similar to Defendants' conduct qualifies as a regulated telephone solicitation which accordingly means that Defendants must adhere to both 1) the DNC Registry; and 2) the requirement that a telemarketer obtain prior express written consent before sending any telemarketing or solicitation messages.

46. Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to her cellular telephone number.

47. Defendants sent the text messages at issue for non-emergency purposes.

48. Upon information and belief, Defendants sent the text messages at issue voluntarily.

49. The purpose of the text messages at issue was to advertise and to market Defendants' business or services.

50. Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors, including by way of executing assignment contracts.

51. As a result, Skymount PG either (1) solicited Plaintiff to sell her home to them at a discount in order for Defendants to resell or rent Plaintiff's home; (2) solicited Plaintiff to submit her information to Defendants' lead generation service and, if Plaintiff expressed an interest in selling their home, Defendants would then sell that via an assignment contract or immediate purchase-and-resale to investors for a profit; or (3) if Plaintiff did not want to sell her home but otherwise expressed interest in a represented real estate transaction, solicited Plaintiff to use

12

Skymount Realty for "conventional" real estate brokerage representation.

52. Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to her cellular telephone number.

53. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

54. Upon information and belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

## Class Action Allegations

55. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class (the "Class"):

> All persons throughout the United States (1) to whom Skymount Property Group, LLC or Skymount Realty, LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Skymount Property Group, LLC's or Skymount Realty, LLC's, or their business partners', goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Skymount Property Group, LLC or Skymount Realty, LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

56. Excluded from the Class are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

57. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable.

58. The exact number of members of the Class are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

59. The members of the Class are ascertainable because the Class is defined by

reference to objective criteria.

60. In addition, the members of the Class are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Class.

61. Plaintiff's claims are typical of the claims of the members of the Class.

62. As it did for all members of the Class, Defendants delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her telephone number with the DNC Registry.

63. Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice, and procedure on the part of Defendants.

64. Plaintiff's claims are based on the same theories as are the claims of the members of the Class.

65. Plaintiff suffered the same injuries as the members of the Class.

66. Plaintiff will fairly and adequately protect the interests of the members of the Class.

67. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class.

68. Plaintiff will vigorously pursue the claims of the members of the Class.

69. Plaintiff has retained counsel experienced and competent in class action litigation.

70. Plaintiff's counsel will vigorously pursue this matter.

71. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Class.

72. The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class.

73. Issues of law and fact common to all members of the Class include:

    a. Defendants' conduct, pattern, and practices as it pertains to delivering advertisement and telemarketing text messages;

    b. For the Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

    c. Whether Skymount Realty is responsible for the conduct of Skymount PG as either a joint venture, or based on agency theories;

    d. Defendants' violations of the TCPA; and

    e. The availability of statutory penalties.

74. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

75. If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

76. The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

77. The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

78. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

15

79. The damages suffered by the individual member of the Class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.

80. The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

81. There will be no extraordinary difficulty in the management of this action as a class action.

82. Defendants acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Class**

83. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-82.

84. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

85. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

86. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone

16

numbers."

87. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

88. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Class who registered their respective residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

89. Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and the Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

90. In the alternative, Skymount PG violated 47 U.S.C. § 227(c)(5) by delivering more than one solicitation text message in a 12-month period in violation of 47 C.F.R. § 64.1200(c), and Skymount Realty is liable for Skymount PG's violations because (1) Skymount Realty is owned and operated by the same person(s), and conducting the same business; (2) Skymount Realty ratified Skymount PG's conduct by either accepting leads generated by Skymount PG's telemarketing campaign, agreeing to receive revenue that arouse out of Skymount PG's telemarketing campaign, and promoting Skymount PG's conduct in its communications to consumers; and (3) Skymount PG acted with actual authority on behalf of Skymount Realty in delivering solicitation text messages in violation of 47 C.F.R. § 64.1200(c).

91. As a result, Skymount Realty would also be vicariously liable for Skymount PG's

conduct.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the proposed Class under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the Class damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the Class treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and the members of the Class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: June 20, 2025.

/s/ Alex D. Kruzyk
Bryan A. Giribaldo* (to seek admission *pro hac vice*)
Alex D. Kruzyk* (to seek admission *pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
bgiribaldo@pkglegal.com
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed class*